# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| C. L. Curtis,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　　Defendant. | No. CV-18-00649-PHX-DGC<br><br>**ORDER** |

Plaintiff C.L. Curtis seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and is based on legal error, the Commissioner's decision will be vacated, and the matter remanded for further administrative proceedings.

**I.　Background.**

Plaintiff is a fifty-eight-year-old female who previously worked as a server, a stocker, and a housekeeper. A.R. 54. On March 5, 2014, Plaintiff applied for disability insurance benefits and supplemental security income, initially alleging disability beginning February 2, 2011. She later amended the onset date to January 1, 2014. A.R. 15. Plaintiff was last insured for SSDI benefits on June 30, 2015. A.R. 15. On February 13, 2017, she appeared with her attorney and testified before an ALJ. A.R. 15. A vocational expert also

testified. A.R. 15. On March 27, 2017, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. A.R. 15. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. A.R. 1.

## II. Legal Standard.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). To establish disability, the claimant must show that (1) she is not currently working, (2) she has a severe impairment,

and (3) this impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") prevents her performance of any past relevant work. If the claimant meets her burden through step three, the Commissioner must find her disabled. If the inquiry proceeds to step four and the claimant shows that she is incapable of performing past relevant work, the Commissioner must show at step five that the claimant is capable of other work suitable for her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2015, and that she has not engaged in substantial gainful activity since January 1, 2014. A.R. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: cervical degenerative disc disease with stenosis, lumbar degenerative disc disease, and bilateral carpal tunnel syndrome status post right release. A.R. 17. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. A.R. 20. At step four, the ALJ found that Plaintiff has the RFC to perform:

> [L]ight work as defined in 20 C.F.R. 404.1567(b) except that the claimant can never climb ladders, ropes, or scaffolds; frequently climb ramps or stairs; frequently balance, stoop, crouch, kneel, and crawl; frequently handle, or feel bilaterally; and the claimant can have only occasional exposure to dangerous machinery with moving mechanical parts, as well as unprotected heights that are high or exposed..

A.R. 21. The ALJ further found that Plaintiff is unable to perform any of her past relevant work. A.R. 28. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found at step five that jobs exist in significant numbers in the national economy that Plaintiff could perform, such as hostess. A.R. at 29.

**IV. Analysis.**

Plaintiff argues that the ALJ's decision is defective for two reasons: (1) the ALJ improperly weighed Plaintiff's examining physician's medical opinions, and (2) the ALJ improperly rejected Plaintiff's symptom testimony. The Court will address each argument.

**A. Weighing of Medical Source Evidence.**

Plaintiff argues that the ALJ improperly weighed the medical opinions of Dr. Garrison and the state's nonexamining physicians, Drs. Keer and Khan.

**1. Legal Standard**

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(1), (c).

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22.

### 2. Dr. Garrison.

Dr. Garrison provided two medical opinions. He provided the first opinion as an examining doctor, and the second after he became Plaintiff's treating physician. *See* A.R. 515 (examining physician, September 2, 2014), 525 (treating physician, May 13, 2016). The ALJ did not expressly find that other medical opinions in the record contradicted Dr. Garrison's, but the Court can infer from the record that Dr. Garrison's assessments differed from those of agency nonexamining physicians on Plaintiff's ability to lift or carry, stand or walk, and sit. *See* A.R. 69; *see also Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (the Court may infer from the record that an opinion is contradicted).

#### a. Dr. Garrison's First Opinion.

On September 2, 2014, Dr. Garrison opined that the claimant could lift less than ten pounds occasionally and carry less than ten pounds frequently. A.R. 521. Plaintiff had no limitations sitting, standing, or walking, and she had some postural and environmental limitations. A.R. 521. The ALJ described all of Dr. Garrison's examination findings, outside of Plaintiff's reduced grip, to be essentially normal. *Id.* For example, Plaintiff could sit in a chair without discomfort, stand, walk, and get on and sit on the examination table with no assistance. A.R. 26. Moreover, Plaintiff had normal gait and was able to stoop without difficulty, lift each foot off the ground, and stand without assistance. *Id.* The ALJ assigned partial weight to the September 2, 2014 opinion to the extent it supported the ALJ's RFC. A.R. 26. The ALJ discredited the opinion because (1) the opinion was based primarily on Plaintiff's subjective complaints, (2) Dr. Garrison's findings on reduced

grip were not corroborated by later treatment records, and (3) Dr. Garrison based Plaintiff's lifting and carrying limitations on his reduced grip finding. A.R. 26. Because it is a contradicted opinion of an examining physician, Dr. Garrison's opinion may be rejected only for specific and legitimate reasons. *Lester*, 81 F.3d at 830-31.

      The ALJ's first reason is not a specific and legitimate reason for discrediting Dr. Garrison's opinion. An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as not credible. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008). As discussed below, however, Plaintiff's testimony was improperly discounted. Further, Dr. Garrison performed an exam, and there is no evidence that his opinion was based on anything other than his exam. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 199 (9th Cir. 2008) ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations").

      The Court addresses the ALJ's second and third reasons together. The ALJ stated that the lifting and carrying limitations appear to be based upon the doctor's finding of reduced grip, and the ALJ is unable to give any weight to Dr. Garrison's finding of reduced grip because "later treatment notes do no reveal similar decreased strength in the hands." A.R. 26 (citing A.R. 537). It is unclear what "reduced-grip" finding the ALJ is referring to. Dr. Garrison's opinion notes that he assessed Plaintiff's grip strength and it was normal. A.R. 518. Dr. Garrison then indicated that Plaintiff's strength was assessed in the hand detailed exam and it was 3/5. A.R. 519. The ALJ determined that Plaintiff's lift and carry limitations were based on the reduced-grip finding because all of Dr. Garrison's other findings were normal. A.R. 26. But Dr. Garrison's opinion notes several abnormal findings, including decreased cervical extension; decreased cervical flexion; positive Spurling test on the right; tenderness to palpitation on cervical C5 and C6; limited active and passive range of motion of the wrist; severe pain with palpitation to both wrists and hands; Bouchard nodes in each hand; abnormal sensation to light touch, vibration, and pain

on the bilateral C6 dermatome; and positive Phalen and Tinel tests bilaterally. A.R. 518-19. Considering these findings, it does not appear that Dr. Garrison's limitations on lifting and carrying were based on Plaintiff's grip strength. Thus, although the ALJ's reason for discounting Dr. Garrison's opinion is specific, it is not legitimate because it does not accurately reflect the doctor's findings.

This error would be harmless if the Court could "conclude from the record that the ALJ would have reached the same result absent the error." *Molina*, 674 F.3d at 1115. Dr. Garrison opined that Plaintiff could occasionally lift up to ten pounds and frequently carry up to ten pounds. A.R. 521. The vocational expert testified that an individual who could only lift ten pounds would not be able to do any work. *See* A.R. 71. Thus, the Court cannot conclude the ALJ's error was harmless.

### b. Dr. Garrison's Second Opinion.

On May 16, 2016, after Dr. Garrison became Plaintiff's treating physician, he opined that Plaintiff could sit for a total of four hours in an eight-hour work day and stand or walk for a total of three hours. A.R. 26, 525. He noted that Plaintiff suffered from fatigue, generalized pain, and generalized tenderness due to fibromyalgia. A.R. 26, 525. After examination, he reported that Plaintiff had eighteen out of eighteen tender points and that her symptoms had persisted since January 20, 2004. A.R. 26, 528. Dr. Garrison opined that Plaintiff had severe limitations in activities and extreme limitations in all areas of mental functioning due to fatigue and pain. A.R. 26, 529. Plaintiff would be off task due to fatigue three hours a day, and absent from work eight to ten days a month. A.R. 529.

The ALJ gave this opinion little weight for several reasons. First, it was rendered almost one year after the claimant's date of last insured. A.R. 26. Second, the Doctor's notation that Plaintiff's symptoms persisted since January of 2004 was inconsistent with his September 2014 opinion, which indicated that the claimant "had subjective complaints of pain with no obvious pathology on physical exam, and that no pain or tenderness was elicited at tender points." A.R. 26, 521. Third, it was inconsistent with treatment records that do not reflect such severe limitations. A.R. 26. The ALJ was required to provide

"specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31.

Plaintiff argues that the ALJ's first reason is not a specific and legitimate reason for discounting Dr. Garrison's opinion. The Ninth Circuit has held that medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). To the extent Dr. Garrison's opinion addresses symptoms Plaintiff experienced prior to June 30, 2015, the ALJ should consider it. *See Messinger v. Comm'r of Soc. Sec. Admin.*, No. CV-16-02529-PHX-DGC, 2017 WL 2351663, at *4 n.1 (D. Ariz. May 31, 2017) (such a delay is not irrelevant but, without more explanation, it is not a specific and legitimate reason for discounting an opinion). But if the opinion does not relate back to conditions during the relevant time period, the ALJ may assign it little weight. *See Baker v. Astrue*, No. CV-08-101—PHX-DGC, 2009 WL 43868, at *3 (D. Ariz. Feb. 23, 2009) (the opinion must "relate back" to the relevant time period).

Dr. Garrison's opinion outlined Plaintiff's limitations in relation to fibromyalgia symptoms, which started in January 2004. A.R. 525-27. The ALJ did not identify fibromyalgia as one of the Plaintiff's impairments during the relevant time period, and Plaintiff did not challenge this determination. A.R. 19. Because the opinion relates to a condition other than a pre-expiration condition, the ALJ properly discounted its weight.

Plaintiff argues that Dr. Garrison's note that fibromyalgia symptoms have persisted since January of 2004 is a typographical error that actually meant January 2014. Because Plaintiff's disability onset date is January 2014, she argues, Dr. Garrison's opinion is consistent with the record. Doc. 12 at 17. Regardless of the date of disability onset, Dr. Garrison's first report indicated, as of September 2, 2014, that there was no obvious pathology on physical exam of subjective complaints of pain, and no pain or tenderness at tender points. This is an internal inconsistency in Dr. Garrison's medical records. The ALJ properly rejected Dr. Garrison's second opinion on this basis.

- 8 -

The ALJ's final reason for discrediting Dr. Garrison's second report was that his opinion was inconsistent with treatment records that do not reflect such severe limitations. An ALJ can reject a treating physician's statement if it is "unsupported by the record as a whole or by objective medical findings." *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014). But specific evidence must support this finding. *Id.* at 1138; *Spendlove v. Comm'r*, No. CV-17-08157-PCT-DGC, 2018 WL 3633744, at *3 (D. Ariz. July 31, 2018) (ALJ did not properly reject doctor's opinion where he did not identify any specific inconsistency within the notes). Here, the ALJ cites to several medical records to support her statement. *See* A.R. 26 (citing A.R. 671, 685, 703, 716, 730, 735, 793). It is unclear how these records contradict Dr. Garrison's opined limitations. All of them are from examinations with treating physicians and represent findings and other treatment notes, such as medication lists. *See* A.R. 685, 793. Although, there are indications of some "normal" findings in these notes, (A.R. 671 ("exam normal hands left . . . right"), 735 (normal range of motion, no pain, strength testing was 5/5)), there is no indication that these findings change Plaintiff's underlying abilities. Further, many of the records also indicate abnormal findings. *See* A.R. 703 (finding muscle spasms and moderately reduced range of motion), 716 (moderate pain with motion, moderately reduced range of motion in elbow), 730 (moderately reduced range of motion in cervical spine). While the ALJ has set out a summary of the facts and evidence, she failed to state her interpretation of the evidence and make findings. *Embrey*, 849 F.2d at 421-22. This is not a specific and legitimate reason for rejecting Dr. Garrison's second opinion.

In summary, the ALJ properly rejected Dr. Garrison's second opinion because it related to a post-expiration condition and was inconsistent with his 2014 examination. The ALJ improperly rejected Dr. Garrison's opinion for inconsistencies with the medical record. This case is a close call, but where inferences can be drawn on either side, the Court must defer to the ALJ. *Thomas*, 278 F.3d at 954. The Court will affirm the ALJ's opinion regarding Dr. Garrison's second opinion.

### 3. Crediting Non-Examining Physician.

The ALJ accorded great weight to the opinions of the state agency's nonexamining physicians, Dr. Keer and Dr. Khan. These doctors opined that Plaintiff could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds. A.R. 69, 81. They also opined that Plaintiff is limited in handling, fingering, and feeling in both hands due to carpel tunnel syndrome. A.R. 70, 82. The ALJ found these opinions substantiated by the medical evidence. A.R. 26. She also noted that Drs. Keer and Khan are "well versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act and Regulations." A.R. 26. She further identified diagnostic testing that supported these opinions, including that Plaintiff had no evidence of bilateral cervical neuropathy, Plaintiff underwent carpel tunnel syndrome surgery, and during one exam had decreased range of motion of the cervical spine on the right with a positive Spurling test, but range of motion of the cervical spine was normal with no weakness or pain noted. A.R. 26-27. (citing A.R. 518, 719, 784).

The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831. But the nonexamining opinion may constitute substantial evidence when it is supported by independent clinical findings. *See Thomas*, 278 F.3d at 957.

The ALJ provided specific evidence to support the weight she assigned to the state physician. Findings of carpal tunnel syndrome support the state examiner's conclusion that Plaintiff is limited by carpal tunnel syndrome, but the ALJ did not explain why the lack of cervical radiculopathy supports the state examiner's vocational limitations.[1] The ALJ cited Dr. Garrison's opinion regarding normal cervical range of motion, which supported her conclusion that Plaintiff can participate in light work, but the ALJ ignored other parts of Dr. Garrison's opinion, indicating that Plaintiff had "decreased cervical flexion, decreased cervical extension," and tenderness "to palpitation on cervical C5 and

---

[1] The ALJ's opinion states "bilateral cervical neuropathy," but the cited record states "bilateral cervical radiculopathy." *See* A.R. 719.

C6 vertebral levels bilaterally." *See* A.R. 518; *see also* Doc. 12 at 18. Dr. Garrison's opinion also noted an April 2014 MRI that revealed Plaintiff had "significant foraminal stenosis at C5-C7." *See* A.R. 515, 696; *see also Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (The ALJ may not select normal findings from a test or assessment while ignoring abnormal findings).

Nor does the ALJ's conclusion address the several examples identified by the Court above, which contradict that Plaintiff had a normal range of motion of the spine. *See, e.g.,* A.R. 703, 716, 730. The Court cannot conclude from the ALJ's discussion that the nonexamining opinions are supported by independent clinical findings when the record is reviewed as a whole. As a result, the ALJ erred in relying on those opinions to reject the opinions of Dr. Garrison.

### B. The ALJ Erred in Evaluating Plaintiff's Credibility.

In evaluating a Plaintiff's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015.

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. A.R. 22. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." A.R. 22.

At the hearing Plaintiff testified that she cannot work due to fibromyalgia, arthritis, neuropathy, and carpel tunnel syndrome. A.R. 43. She testified that she cannot sleep, her

hands are constantly numb, tingling, or in pain, and she has lower back pain if she stands too long. A.R. 44. She cannot stay in any position for a very long period of time without feeling a lot of pain. A.R. 48. Further, she testified that she is unable to lift anything heavy with her hands. A.R. 44. She stated that she has felt no relief since her right carpel tunnel surgery. A.R. 44. She testified it takes a lot of energy to shower and get dressed, and if she needs to go somewhere during the day she will rest beforehand and bring her own pillow. A.R. 46. She testified to pain in her hands all the way up to her neck. A.R. 47. The pain is consistently at a level of four to six on most days. A.R. 51. She stopped driving after a recent injection in her neck and can spend up to weeks in bed if her fibromyalgia is bad. A.R. 47, 51. Plaintiff also testified to memory and concentration problems, and she has trouble reading or watching television for extended periods of time. A.R. 51-52. Plaintiff stated that she plans on having a left carpal tunnel release, and she is currently in physical therapy. A.R. 52.

The ALJ gave the following reasons for finding Plaintiff's testimony not fully credible: (1) the medical evidence does not support the alleged level of limitation arising from these impairments (A.R. 22); (2) findings in the record suggest that Plaintiff may not have been entirely forthcoming with respect to the limitations imposed by her impairments; and (3) Plaintiff's daily activities contradict her alleged limitations. A.R. 22-24.

### 1. The ALJ's First Reason.

The ALJ's first reason – the medical evidence does not support the alleged level of limitation arising from these impairments – is not clear and convincing evidence to reject Plaintiff's testimony. An ALJ may rely on contradictory medical evidence to discredit symptom testimony so long as she "make[s] specific findings justifying [her] decision." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

The ALJ cites numerous medical records to support her credibility findings. For example, the ALJ notes one examination where Plaintiff had positive Tinel's and Phalen's maneuver of both hands, but her radial, ulnar, and median nerves were grossly intact; no significant atrophy was noted within the thenar musculature, and her elbow motion was unremarkable. A.R. 27. A nerve conduction test showed evidence of bilateral moderate median nerve neuropathy at the wrists, but no cervical radiculopathy. A.R. 27. On another occasion, Plaintiff reported pain radiating down her legs and defuse paraspinal tenderness to lumbar spine, but she had a normal range of motion of all four extremities and images of the lumbar spine revealed only degenerative disc space narrowing at the L4 interspace. A.R. 22. Later, an exam revealed muscle spasms and tenderness to palpation of the cervical region, as well as decreased range of motion of the neck, but her gait and sensation were normal. A.R. 23.

The Court finds that the ALJ's cited evidence does not amount to the clear and convincing evidence necessary for discounting Plaintiff's general pain testimony. Most of the records indicate normal or moderate medical findings combined with abnormal findings. But the ALJ fails to explain why the abnormal findings do not support Plaintiff's general pain testimony or why the normal findings should be given more weight than the abnormal findings. *See Garrison*, 59 F.3d at 1009 (must view record as a whole). And some of the evidence cited by the ALJ was in complete. For example, regarding Plaintiff's improvement after carpel tunnel surgery, the ALJ cited pre-exam records that showed atrophy and post-exam records that showed an absence of atrophy. A.R. 25. The ALJ noted records that showed continued improvement following surgery, including motor testing with 5/5 strength except for right deltoid, right wrists flexors, right wrist extensors, and right triceps, which were all 4/5. A.R. 25 (citing A.R. 537). But the ALJ omitted the portion of the record that stated Plaintiff's deep tendon reflexes were 0/4 for right brachioradialis, 1/4 for right biceps, 0/4 for right triceps, and 2/4 in the same distribution on the left side. A.R. 537. *Garrison*, 759 F.3d at 1017 n.23 (the ALJ cannot cherry-pick sentences or phrases while ignoring the greater context).

The ALJ did provide clear and convincing evidence to discredit Plaintiff's testimony that she can only stand and sit up to fifteen minutes at a time. The ALJ cited treatment notes that show "normal strength and sensation in her bilateral lower extremities with a normal gait" (A.R. 25) and a February 2014 exam that showed a normal range of motion, muscle strength, and stability in all extremities (*id.* (citing A.R. 735)). During her consultation with Dr. Garrison, Plaintiff was able to sit in the chair without discomfort for the duration of the exam. A.R. 518. She was able to stand, walk to the examination table, and get onto and sit on the table without assistance. A.R. 518. Her gait was normal, she could stoop without difficulty, and she was observed standing from a sitting position and sitting from a standing position without assistance. A.R. 24. The ALJ concluded that these findings did not support Plaintiff's reported limitations and were consistent with an ability to stand and walk six hours in an eight-hour day. A.R. 25. Although Plaintiff's ability to walk and get on an exam table does not necessarily mean her pain testimony was incorrect, the fact that she could sit through an entire appointment and appeared to have no trouble walking is sufficiently clear and convincing evidence to undermine her testimony. *See* A.R. 48; *see also Thomas*, 278 F.3d at 954 (when inferences can be drawn on either side, the Court must defer to the ALJ).

The Court concludes that the ALJ's first reason provided a clear and convincing reason to discredit Plaintiff's testimony that she could sit and stand only for fifteen minutes at a time, but the ALJ did not provide clear and convincing evidence for discounting Plaintiff's remaining general pain testimony.

**2. ALJ's Second Reason**.

The ALJ's second reason – Plaintiff was not forthcoming with respect to limitations imposed by her impairments – is a clear and convincing reason to discount her testimony. An ALJ may consider "ordinary techniques of credibility evaluation, such as a plaintiff's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *See Smolen*, 80 F.3d at 1284. The ALJ may also consider observations by treating physicians regarding the frequency,

nature, and severity of Plaintiff's symptoms. *Id.*

The ALJ first noted that in May 2014, Plaintiff's physician discharged her after her urine drug screen tested positive for morphine, which she was not prescribed. A.R. 23. In the discharge letter, Plaintiff's doctor stated that Plaintiff first explained the presence of morphine by saying that she took some of her father's medications, but then said she received it during a hospital visit. A.R. 497. After checking with the local hospital, the doctor concluded that Plaintiff had not gone to the hospital. A.R. 497. Further, Plaintiff had presented four days early for her appointment, stating that she had run out of medications. A.R. 23. A second drug screen tested positive for morphine and Oxycodone, although Plaintiff did not have a prescription for either. A.R. 23. The second test was also positive for marijuana. A.R. 23. Inconsistent or dishonest statements related to Plaintiff's use of illegal drugs can reflect on Plaintiff's general candor. *See Thomas*, 278 F.3d at 959 (proper to discredit testimony where Plaintiff gave inconsistent statements about drug and alcohol history); *Lopez v. Colvin*, 194 F. Supp. 3d 903, 912-13 (D. Ariz. 2016) (same).

The ALJ also noted that during one exam a treating physician found that Plaintiff's lack of effort made it difficult to assess her motor strength accurately. The physician had to distract Plaintiff to obtain accurate measurements. A.R. 24, 537. An ALJ may consider observations from physicians when evaluating the severity of Plaintiff's symptoms. Lack of effort provides a basis for discrediting a plaintiff's testimony. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (noting that an ALJ's rejection of claimant's symptom testimony was supported by evidence that claimant "appeared not to exert adequate effort during testing").

Plaintiff's lack of candor about her illegal drug use and lack of effort in a medical examination constitute clear and convincing reasons to question her general credibility. The ALJ provided sufficient evidence to support her second reason.[2]

---

[2] The ALJ also cited Dr. Garrison, who noted that Plaintiff arrived with a cane, but that no assistive device was used in any of the exam maneuvers and she obtained the cane over the counter. A.R. 27. Plaintiff never testified to needing a cane or an assistive device. Thus, this evidence is not clear and convincing evidence that discredits Plaintiff's testimony. *Brown-Hunter*, 806 F.3d at 493.

- 15 -

### 3. The ALJ's Third Reason.

The ALJ found that "treatment notes further reflect that the Plaintiff was able to care for her sick father, which is inconsistent with her allegations of totally disabling symptoms and limitations." A.R. 27. An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). She may only do so if the activities contradict the claimed limitations or she shows the Plaintiff "spend[s] a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639.

It is unclear what treatment records the ALJ is referring to. The Plaintiff did not testify to caring for her father, nor did she include such information in her function report. *See* A.R. 197-99. The ALJ provided no citations to support her assertion, and the Court will not "comb the record" to find supporting evidence. *See cf. Burrell*, 775 F.3d. at 1138. The ALJ has similarly failed to show how this alleged activity contradicts Plaintiff's claimed limitations or that Plaintiff spends a substantial part of her day performing these activities. The Court cannot conclude this is a clear and convincing reason to reject Plaintiff's symptom testimony.

### 4. Conclusion.

The ALJ provided sufficient clear and convincing evidence to question Plaintiff's testimony that she cannot sit or stand for more than fifteen minutes. And the ALJ reasonably concluded that Plaintiff's credibility was undermined by her use of illegal drugs and lack of effort as reported in Plaintiff's examination.

### C. Remand.

The ALJ erred in discrediting Dr. Garrison's first opinion and in crediting the nonexamining physicians' opinion. Plaintiff contends that, crediting these opinions as true, the Court must remand for an award of benefits. Docs 18 at 25.

"When the ALJ denies benefits and the Court finds error, the Court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon*

*v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry:

> First, the Court asks whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, the Court determines whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, [the Court] will then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal quotation marks and citations omitted). *Leon* emphasized that the Court has discretion to remand for further proceedings even if it reaches the third step in the process. *Id.* "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quotation marks omitted).

The ALJ erred in discrediting Dr. Garrison's first opinion, but not his second opinion, and she failed to cite sufficient evidence to support her acceptance of the examining doctor opinions. The ALJ did, however, identify clear and convincing reasons for discounting Plaintiff's symptom testimony.

The Court concludes that there are outstanding issues that must be resolved before a disability determination can be made, including the proper weighing of the experts' opinions. The Court also concludes that Plaintiff's lack of credibility raises doubt as to her disability. Further proceedings before the ALJ are warranted.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and **terminate** this action.

Dated this 6th day of December, 2018.

*David G. Campbell*
David G. Campbell
Senior United States District Judge